## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAELLE LEGER, BARBARA DIVINO, ELENA DIVINO, ZAIDA TORRES, and ALIVIA CAMPBELL, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

Case No.:

FULL SPECTRUM BEHAVIOR ANALYSIS LLC,

    Defendant.
_____)

## **FLSA COLLECTIVE ACTION COMPLAINT**

Plaintiffs, MICHAELLE LEGER ("Leger"), BARBARA DIVINO ("B. Divino"), ELENA DIVINO ("E. Divino"), ZAIDA TORRES ("Torres"), and ALIVIA CAMPBELL ("Campbell") (hereinafter referred to jointly as "Collective Action Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, bring this collective action against Defendant, FULL SPECTRUM BEHAVIOR ANALYSIS, LLC, ("FSBA"), for unpaid minimum wages, unpaid overtime compensation, liquidated damages, declaratory relief and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA").

## **NATURE OF SUIT**

1. This action is brought under the FLSA by and on behalf of persons who are working or have worked for FSBA as a Registered Behavior Technician ("RBT"), Behavior Services Assistant ("BSA"), Board Certified Behavior Analyst ("BCBA"), Clinical Director, and/or Regional Director at some time during the applicable limitations period.

2. This is a collective action which challenges FSBA's uniform policy of willfully misclassifying its employees as independent contractors and seeks to recover unpaid wages and overtime compensation, liquidated damages, and reasonable attorneys' fees and costs.

3. As a result of FSBA's unlawful misclassification of its employees as independent contractors, FSBA has uniformly violated the requirements of the FLSA by, among other things:

   a. Failing to pay its employees at least the minimum wage required under Federal and Florida law for every hour worked;

   b. Failing to pay its employees overtime compensation for hours worked in excess of forty (40) hours in one week; and

   c. Failing to adequately maintain records of the time worked by its employees.

## JURISDICTION AND VENUE

4. This Complaint is filed as a collective action under 29 U.S.C. 216(b).

5. This Court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, because the claims arise under the FLSA, as amended, 29 U.S.C. 210, *et seq*.

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because FSBA resides within this District and a substantial part of the events and omissions giving rise to these claims occurred within this District.

## PARTIES

7. Leger is a resident of Florida and worked for FSBA as an RBT between approximately February 2017 and August 2018.

8. B. Divino is a resident of Florida and worked for FSBA as a BCBA and/or Clinical Director between approximately May 2016 and August 2018.

9. E. Divino is a resident of Florida and worked for FSBA as a BSA between

approximately June 2017 and August 2018.

10. Torres is a resident of Florida and worked for FSBA as a BCBA, Clinical Director, and/or Regional Director between approximately November 2016 and May 2018.

11. Campbell is a resident of Florida and worked for FSBA as a BCBA, Clinical Director, and/or Regional Director between approximately May 2017 and May 2018.

12. FSBA is a Florida limited liability company with its primary place of business in Hillsborough County, Florida.

13. Upon information and belief, FSBA provides services to clients and employs staff in all of Florida and Michigan.

## COVERAGE

14. At all times material hereto, FSBA was and is an "enterprise" covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203(s).

15. At all times material hereto, FSBA was and is an "employer" as defined by 29 U.S.C. § 203(d).

16. At all times material hereto, FSBA has been and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(l) of the FLSA, in that FSBA has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that FSBA has had and has an annual gross volume of sales made or business done of not less than $500,000.

17. At all times material hereto, the Collective Action Plaintiffs, and those similarly situated to them, were and are individually covered by the FLSA because they regularly and repeatedly prepare(d), handle(d), and submit(ted) paperwork sent out of state to various

insurance companies and Medicaid.

## FACTUAL ALLEGATIONS

18. FSBA is engaged in the business of providing Applied Behavior Analysis ("ABA") services to clients with developmental disabilities and impairments.

19. ABA services are used to help support individuals with developmental disabilities and impairments by increasing, maintaining, or generalizing certain behaviors; teaching new skills; restricting conditions for interfering behaviors; and reducing interfering behaviors.

20. According to its website, FSBA purports to maintain a staff of over 200 ABA practitioners, including BCBAs, RBTs, and BSAs.

### BCBAs

21. A BCBA is a professional who has received a graduate-level certification in behavior analysis.

22. As part of their responsibilities at FSBA, BCBAs were expected to provide therapy support services, provide assessments for clients, develop a plan of care, and ensure the implementation of the plan.

23. BCBAs are compensated at a fixed hourly rate for each hour of services invoiced to FSBA's clients.

24. BCBAs are not paid for any of the hours spent attending trainings or meetings, completing paperwork, preparing plans of care or assessments, or performing administrative tasks or other work for FSBA that is not invoiced to a client.

25. Moreover, FSBA has no obligation to pay BCBAs for their hours of work unless FSBA receives payment from the client, which means that BCBAs may not receive any compensation for their hours worked for FSBA.

**RBTs and BSAs**

26. RBTs and BSAs are considered paraprofessionals who are required to practice under the close, ongoing supervision of a BCaBA, BCBA, or BCBA-D.

27. RBTs and BSAs are primarily responsible for the direct implementation of behavior-analytic services and do not design intervention or assessment plans.

28. FSBA also required RBTs and BSAs to sign "Supervision Agreements."

29. In these Supervision Agreements, FSBA agreed to provide supervision for the RBTs and BSAs in order to provide practical experience that could be used towards an eligibility requirement for a Bachelor's-level Board Certified Assistant Behavior Analyst ("BCaBA") credential or a Master's-level BCBA credential.

30. Under the Supervision Agreements, RBTs and BSAs were expected to pay $100 for each hour of supervision, even though RBTs and BSAs were, on average, only being compensated at a rate of $13.00 per hour.

31. The Supervision Agreements agreed to waive all supervision fees if RBTs and BSAs signed a contractor agreement to work for FSBA for a minimum of 30 hours per week for at least a year after completing their supervision hours.

32. However, if RBTs and BSAs declined to continue to work for FSBA and did not terminate the supervisor-supervisee relationship under "positive conditions," they would be obligated to pay the full amount of supervision fees to FSBA.

33. RBTs and BSAs are compensated at a fixed hourly rate for each hour of services invoiced to FSBA's clients.

34. RBTs and BSAs are not paid for any of the hours spent attending trainings or meetings, completing paperwork, or performing administrative tasks or other work for FSBA

that is not invoiced to a client.

35. Moreover, FSBA has no obligation to pay RBTs and BSAs for their hours of work unless FSBA receives payment from the client, which means that RBTs and BSAs may not receive any compensation for their hours worked for FSBA.

**Clinical Directors and Regional Directors**

36. FSBA also purports to retain "independent contractors" to serve as Clinical Directors and Regional Directors for FSBA's operations.

37. FSBA's Clinical Directors and Regional Directors are responsible for assisting, training, and supervising FSBA's independent contractors in acquiring practical experience.

38. As part of their duties, Clinical Directors and Regional Directors are also responsible for handling all clinical decisions, complaints from FSBA's clients, informal inquiries from potential new clients, and other administrative and management tasks.

39. Clinical Directors and Regional Directors are required to prepare written weekly reports to update FSBA on any issues that may require the attention of FSBA's management and are expected to update FSBA on any developments in clinical and marketing trends.

40. Regional Directors are also expected to supervise and coordinate staffing assignments and placements; mentor new hires and answer company-related questions; provide training to parents, teachers, and staff; maintain relationships with school and facility administrators; and market FSBA's services to new regions, schools and facilities.

41. Despite being classified as "independent contractors," FSBA's Clinical Directors and Regional Directors are also required to sign Supervision Agreements with RBTs and BSAs on behalf of FSBA.

42. Clinical Directors and Regional Directors are compensated at a fixed hourly rate

for each hour of services invoiced to FSBA's clients.

43. In connection with the "Director services," FSBA pays its Clinical Directors and Regional Directors a flat hourly rate for each hour billed by a BSA, RBT, or BSBA assigned to that Director.

44. The flat hourly rates for "Director services" range from $0.50 per hour to $4.50 per hour.

45. Clinical Directors and Regional Directors are not paid for any of the hours spent attending meetings, writing reports, or performing managerial, administrative, or supervisory services that are not invoiced to a client.

46. Moreover, FSBA has no obligation to pay Clinical Directors or Regional Directors for their hours of work unless FSBA receives payment from the client, which means that Directors may not receive any compensation for their hours worked for FSBA.

**Misclassification as "independent contractors"**

47. FSBA purports to contract with its BCBAs, RBTs, BSAs, Clinical Directors, and Regional Directors as "independent contractors," rather than employees.

48. However, these "independent contractors" are required to comply with all of FSBA's policies and procedures and are prohibited from seeking alternate employment in ABA without the written consent of FSBA.

49. FSBA's "independent contractors" are also required to attend mandatory orientation and training sessions, as well as mandatory staff meetings at FSBA.

50. FSBA controls the selection of clients, scheduling of services, setting of rates for services, and gives the "independent contractors" instructions as to the work to be performed with each specific client.

51. FSBA willfully and uniformly classified its BCBAs, RBTs, BSAs, Clinical Directors, and Regional Directors, including the Collective Action Plaintiffs, as "independent contractors," not employees, thereby attempting to avoid any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

52. Under the FLSA, the Collective Action Plaintiffs and those similarly situated to them should be considered employees because:

   a. FSBA retains the right to control, and in fact does control, the manner and means by which they accomplish their work;

   b. FSBA controls their schedules and requires them to report to work at set times and dates;

   c. FSBA retains the right to hire and fire them in its sole discretion;

   d. FSBA prohibits them from working for any other ABA companies or performing any other ABA work while working for FSBA;

   e. FSBA retains the right to prevent them from performing services for existing clients and earning a living and, in fact, FSBA has prevented them from performing services in the past;

   f. FSBA requires them to identify themselves as staff of FSBA, as opposed to working for an independent company, and advertises them as staff of FSBA;

   g. FSBA sets all rates of pay and prohibits them from negotiating individual rates for their services;

   h. FSBA requires them to undergo mandatory orientation and training developed by FSBA that is specific to FSBA's policies and procedures; and

   i. FSBA limits the geographical locations in which they are permitted to

work.

53. The wages for the Collective Action Plaintiffs and those similarly situated to them were based on the hours billed to the clients, the insurance company, or Medicaid, not the amount of hours actually worked by them.

54. In addition, the Collective Action Plaintiffs were not paid for hours spent traveling between clients, completing treatment plans, developing materials, conducting group supervisions, conducting supervisions away from clients, analyzing data, or attending mandatory meetings.

55. As a result, FSBA failed to pay the Collective Action Plaintiffs and those similarly situated to them minimum wage for all hours worked in a given workweek.

56. The Collective Action Plaintiffs and those similarly situated to them routinely work(ed) in excess of forty (40) hours per week as part of their regular job duties.

57. Despite working more than forty (40) hours per week, FSBA failed to pay the Collective Action Plaintiffs and those similarly situated to them overtime compensation at a rate of time and a half their regular rate of pay for hours worked over forty in a workweek.

58. FSBA has employed and is employing other individuals as RBTs, BSAs, Clinical Directors, and Regional Directors who perform(ed) the same or similar job duties under the same pay provisions as the Collective Action Plaintiffs.

## **COLLECTIVE ACTION ALLEGATIONS**

59. The Collective Action Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging FSBA's willful practice of misclassifying RBTs, BSAs, BCBAs, Clinical Directors, and Regional Directors as independent contractors rather than employees.

60. The Collective Action Plaintiffs and the class members performed the same or similar job duties as one another on behalf of FSBA.

61. Further, the Collective Action Plaintiffs and the class members were subjected to the same pay provisions in that they were not paid minimum wage for all hours actually worked and not compensated at time-and-one-half for all hours worked in excess of 40 hours in a workweek during the time period when they were misclassified as independent contractors.

62. Thus, the class members are owed minimum wages and overtime wages for the same reasons as the Collective Action Plaintiffs.

63. FSBA's failure to compensate its employees at least minimum wage for all hours worked hours and time and a half for all hours worked in excess of 40 hours in a workweek as required by the FLSA results from a policy or practice based on FSBA's willful and erroneous misclassification of its employees as independent contractors.

64. Further, upon information and belief, FSBA routinely withheld Collective Action Plaintiffs last two weeks of pay, not providing any compensation whatsoever for hours the employees worked.

65. This policy or practice was applicable to the Collective Action Plaintiffs and the class members.

66. Application of this policy or practice does not depend on the personal circumstances of the Collective Action Plaintiffs or those joining this lawsuit.

67. Rather, the same policy or practice which resulted in the non-payment of minimum wage and overtime to the Collective Action Plaintiffs applies to all class members.

68. Accordingly, the class members are properly defined as:

> **All BCBAs, RBTs, BSAs, Clinical Directors, and Regional Directors who worked for FSBA nationwide within the last three years who were not compensated at minimum wage for all hours worked and at time-and-one-half for all hours**

**worked in excess of 40 hours in a workweek**

69. FSBA acted willfully in failing to pay the Collective Action Plaintiffs and the class members in accordance with the law.

70. The Collective Action Plaintiffs have retained the undersigned attorneys to represent them in this action and are obligated to pay the undersigned attorneys a reasonable fee for their services.

71. Pursuant to 29 U.S.C. § 216(b), the Collective Action Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs from FSBA.

72. All conditions precedent to the bringing of this action have occurred, have been waived, or would be futile.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA
**(29 U.S.C. § 206)**

73. The Collective Action Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 72 above, as if fully set forth herein.

74. FSBA is/was the employer of the Collective Action Plaintiffs and those similarly situated to them.

75. FSBA willfully and uniformly misclassified the Collective Action Plaintiffs and those similarly situated to them as independent contractors when they were/are in fact employees of FSBA.

76. The FLSA provides that any employee who receives less than the legal minimum wage applicable to the employee is entitled to recover in a civil action the difference between what the employee was paid and the amount the employee should have been paid, known as back pay, and an equal amount as liquidated damages, plus attorneys' fees and court costs. *See* 29

U.S.C. § 216(b).

77. FSBA failed to pay the Collective Action Plaintiffs and those similarly situated to them the legally required minimum wage for all hours worked for FSBA during the applicable limitations period.

78. FSBA's conduct violates the provisions of the FLSA.

79. As a result of FSBA's unlawful failure to pay minimum wages to the Collective Action Plaintiffs and those similarly situated to them when due has caused them to suffer damages in an amount to be determined at trial.

WHEREFORE, the Collective Action Plaintiffs, and all other similarly situated employees, demand judgment against FSBA for:

a) Designation of this action as a collective action to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consent;

b) Damages in the amount equal to the applicable statutory minimum wage for all unpaid back wages owed to the Collective Action Plaintiffs and those similarly situated to them;

c) Liquidated damages;

d) Reasonable attorneys' fees and costs incurred in this action;

e) A declaration that the Collective Action Plaintiffs and those similarly situated to them were/are employees of FSBA under the terms of the FLSA and not independent contractors;

f) Pre-judgment and post-judgment interest as provided by law;

g) Trial by jury on all issues so triable;

h) Any and all further relief that this Court determines to be appropriate.

## COUNT II
## FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FLSA
### (29 U.S.C. § 207)

80. The Collective Action Plaintiffs incorporate the allegations in Paragraphs 1 through 72 above, as if fully restated herein.

81. FSBA is/was the employer of the Collective Action Plaintiffs and those similarly situated to them.

82. FSBA willfully and uniformly misclassified the Collective Action Plaintiffs and those similarly situated to them as independent contractors when they were/are in fact employees of FSBA.

83. The FLSA provides that employees are entitled to be paid time and a half for all hours worked in excess of forty (40) hours in a workweek.

84. The FLSA provides that an employee who has not been paid overtime compensation may recover, in a civil action, the unpaid amount of overtime compensation, liquidated damages equal to the unpaid amount of overtime compensation, plus attorneys' fees and costs. *See* 29 U.S.C. § 216(b).

85. The Collective Action Plaintiffs and those similarly situated to them are/were entitled to be paid one and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week.

86. During their employment with FSBA, the Collective Action Plaintiffs and those similarly situated to them regularly worked overtime hours.

87. At all times material hereto, FSBA failed and refused to pay the Collective Action Plaintiffs and those similarly situated to them overtime compensation for the hours worked in excess of forty (40) hours per week.

88. As a result of FSBA's intentional, willful, and unlawful acts in refusing to pay the

Collective Action Plaintiffs and those similarly situated to them time and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week in one or more work weeks, the Collective Action Plaintiffs and those similarly situated to them have suffered damages in an amount to be determined at trial.

WHEREFORE, the Collective Action Plaintiffs, and all other similarly situated employees, demand judgment against FSBA for:

a) Designation of this action as a collective action to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consent;

b) Damages in the amount equal to all unpaid overtime hours at one and one-half the regular rate of pay for the hours worked by Collective Action Plaintiffs and those similarly situated to them for which they were not properly compensated by FSBA;

c) Liquidated damages;

d) Reasonable attorneys' fees and costs incurred in this action;

e) A declaration that the Collective Action Plaintiffs and those similarly situated to them were/are employees of FSBA under the terms of the FLSA and not independent contractors;

f) Pre-judgment and post-judgment interest as provided by law;

g) Trial by jury on all issues so triable;

h) Any and all further relief that this Court determines to be appropriate.

## **DEMAND FOR JURY TRIAL**

The Collective Action Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted January 14, 2019.

        BRENNAN MANNA DIAMOND

        By: */s/ Erin R. Whitmore*
        Matthew T. Jackson **Trial Counsel**
        Florida Bar Number: 736759
        Erin R. Whitmore **Trial Counsel**
        Florida Bar Number: 098829
        800 West Monroe Street
        Jacksonville, Florida 32202
        (904) 366-1500
        (904) 366-1501 (facsimile)
        Primary: mtjackson@bmdpl.com
        Primary: erwhitmore@bmdpl.com
        Secondary: memattocks@bmdpl.com
        Secondary: jdejager@bmdpl.com

        and

        Amanda Levy-Reis
        Florida Bar Number: 022622
        27200 Riverview Center Blvd., Ste. 310
        Bonita Springs, FL 34134
        (239) 992-6578
        (239) 992-9328 (facsimile)
        Primary: alreis@bmdpl.com
        Secondary: bonitaservice@bmdpl.com

        *Attorneys for Plaintiffs*